BYE, Circuit Judge,
with whom SMITH, Circuit Judge, joins, dissenting.
I would affirm the district court’s order awarding Norman Rille and Neal Roberts (the relators) a statutorily-required portion of the government’s settlement of the rela-tors’ action. The district court did not apply an incorrect legal standard to the undisputed facts of this case, nor were the district court’s fact findings inadequate for us to review and affirm the relators’ award. I disagree with the Court’s textual interpretation of the statute, and do not believe we should decide the legal question framed by the Court because it cannot be squared with the actual facts involved here. I therefore respectfully dissent from the decision to vacate the district court’s award and to remand for further proceedings.
I
The Court frames the legal question in this appeal as whether a relator is entitled to a share of settlement proceeds when the government “settles both the claim brought by the relator and a different claim that does not overlap factually with the claim brought by the relator.” Ante at 370. Because the government never brought a different claim in the relators’ action, the question framed by the Court is not before us.
I would frame the question as whether proceeds received by the government after intervening in, settling, and dismissing with prejudice a relator’s action constitute “proceeds of the action” under 31' U.S.C. § 3730(d)(1). Under the facts present in this case, I agree with the relators’ contention that the False Claims Act (FCA) contains just two preconditions relevant to such an award: (1) the government “proceeds with an action” originally brought by the relator, and (2) the government receives “proceeds of the action.” This plain and straightforward textual construction reflects the views expressed by Congress in enacting the FCA that a relator is entitled to a minimum 15% “finders fee” whenever the government elects to intervene in a relator’s action and receives proceeds from the resolution of that action (subject to certain statutory exceptions not present here). See Roberts v. Accenture, LLP, 707 F.3d 1011, 1016 (8th Cir.2013) (“If the Government comes into the case, the person is guaranteed a minimum of 15% of the total recovery even if that person does nothing more than file the action in federal court.” (quoting 132 Cong. Rec. H9382-03)).
To avoid this plain and straightforward reading of § 3730(d)(1), the Court reasons the phrase “proceeds of the action” does not refer to proceeds derived from the settlement of an action, but only captures proceeds of an action litigated to final .judgment. The Court, however, does not explain the significance of a distinction between proceeds derived from the settlement of an action and proceeds derived from litigating an action to final judgment. Nor does the Court explain what purpose would be served within the FCA that would necessitate Congress creating such a distinction.
The Court further reasons that if the proceeds derived from the settlement of an action were covered by the phrase “proceeds of the action,” then the phrase “set *376 tlement of the claim” would be superfluous. I do not follow this reasoning. An action can be comprised of multiple claims. A single claim within an action can be settled, or an entire action can be settled, and both are common occurrences in litigation. If the government settles a single claim in a multi-claim action, the proceeds of the settlement naturally fall within § 3730(d)(l)’s reference to “settlement of the claim.” If, however, the government settles the entire action, which was the case here, the proceeds of the settlement naturally fall within § 3730(d)(l)’s reference to “proceeds of the action.” I do not understand why the phrase “settlement of the claim” is superfluous unless Congress necessarily meant to limit the phrase “proceeds of the action” to the proceeds of an action litigated to final judgment.[3]
The Court also rejects the relators’ arguments even assuming the phrase “proceeds of the action” captures the settlement proceeds at issue in this case. The Court reasons that the proceeds must still derive from the action as originally brought by the relators, and not as developed after intervention by the government. Although I disagree with this premise (as I will explain later), the Court’s explanation for its premise is telling because it identifies precisely why the legal question framed by the Court is not properly before us.
The Court explains that the settlement language referring to a “claim” must refer to “the claim” brought by the relator, and “not a claim later added by the government.” Ante at 373. The court goes on to note “[i]t would be inconsistent with the purposes of the Act to permit a relator automatically to receive a share of the proceeds when the relator might have had nothing to do with the government’s recovery on a particular claim that was added after the government’s intervention.” Id. (emphasis added). But those are not the facts of this case. The government never added any claims to the relators’ action after intervening.
As the Court notes, if the government wants to pursue a “different claim” it “has a choice: it may add a new claim while proceeding with an action brought by a relator, or it may pursue the same new claim through the use of an alternate remedy.” Id. This first choice is set forth in § 3731(c), which allows the government— after intervening in the relators’ action — to “file its own complaint or amend the complaint of a person who has brought an action under section 3730(b) to clarify or add details to the claims in which the Government is intervening and to add any additional claims with respect to which the Government contends it is entitled to relief.” (emphasis added). In this case, although the government participated in the relators’ action for approximately two and a half years after intervening, the government never filed its own complaint .setting forth a different claim than the claims brought by the relators. Nor did the government amend the relators’ complaint to clarify or add details to the rela-tors’ claims. Nor did the government amend the relators’ complaint to add any additional claims with respect to which it contended it was entitled to relief. Rather, the only persons who made any claims in the relators’ action were the relators. This is undisputed.
The second. of the government’s two choices for pursuing a different claim is set *377 forth in § 3730(c)(5), which says “the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty.” In this case, the government did not pursue a different claim through an alternate remedy under § 3730(c)(5), but instead elected to intervene in the relators’ action. Again, this is undisputed.
Identifying a “different” claim the government actually pursued — either within the relators’ action via § 3731(c)’s formal pleading provisions, or outside the rela-tors’ action via § 3730(e)(5)’s alternate remedy provisions — would appear to be a necessary prerequisite to requiring the district court to compare a relator’s claim with the government’s claim to determine whether there is a factual overlap.
Instead of identifying when and in what manner it pursued a different claim, the government merely relies upon its inclusion of a reference to a particular contract between Cisco and Comstor in the settlement agreement, the fact that the Inspector General in the General Services Administration (GSA) audited that contract, and the fact that the Department of Energy (DOE), Office of Inspector General (OIG) issued a subpoena to Cisco as a result. While this certainly describes conduct that could form the basis for the government to pursue a claim as a result of its DOE/OIG investigation, it does not establish the government ever actually brought such a claim in a'ecordance with § 3731(c)’s pleading provisions, or pursuant to § 3730(c)(5)’s alternate remedy provisions.
Because the only manner in which the government ever pursued its allegedly different claim was within the confines of the relators’ action, such a “claim” can not as a matter of law be considered a different claim than the relators’ claims because the government never availed itself of the choices available to it under § 3731(c). Moreover, while “a settlement pursued by the government in lieu of intervening in a qui tam action asserting the same FCA claims constitutes an ‘alternate remedy’ for purposes of 31 U.S.C. § 3730(c)(5),” United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 342 F.3d 634, 649 (6th Cir.2003), the settlement pursued by the government here was not in lieu of intervening in the relators’ action, but within the relators’ action after electing to intervene.
II
The Court’s decision has troubling ramifications. First, the Court’s approach necessarily depends upon either ignoring § 3731(c)’s pleading provisions, excusing the government from complying with § 3731(c) when it advances a post-settlement litigation position disputing a relator’s right to receive a share of the proceeds, or judicially adding a third option where the government can informally add a claim to a relator’s action in some manner other than through § 3731(c).[4] I am not willing to ignore § 3731(c)’s pleading provisions, or excuse the government from having to comply with them. Nor do I believe it is proper to construct a third option for the government that is not expressly set forth in the FCA.
*378 I wonder what procedures would govern a judicially-constructed option allowing the government to add a claim to the relators’ action in some manner other than as outlined in § 3731(c). Would this option employ a different definition of “claim” than the one used by Congress at 31 U.S.C. § 3729(b)(2)(A)? Is the government required to give the relators notice when it informally adds a claim to their action? Does the government at least have to inform the district court when it informally adds a claim to a qui tam action? Does an informally-added claim relate back to the original complaint for statute of limitations purposes in the same manner as when the government actually adds a claim in the “Government pleading” discussed in § 3731(c)? I agree the FCA presents “many interpretive challenges,” Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter, — U.S. -, 135 S.Ct. 1970, 1979, 191 L.Ed.2d 899 (2015), but following the Court’s approach would cross the line between interpretation and legislation.
Second, the Court’s factual overlap remand is unsound, and I am concerned it will confuse the district court in this ease and district courts who have to wrestle with future FCA cases. Describing certain conduct in a settlement agreement does not equate to pursuing a claim, so where is the “different” government claim the district court is supposed to compare to the relators’ claims? In this case, where the conduct described by the government as a “different claim” was settled within an action comprised exclusively of the relators’ claims, there is no government claim to compare to the relators’ claims.
Typically, a factual overlap analysis is required in cases arising under § 3730(e)(5)’s alternate remedy provisions, not intervention cases governed by § 3730(d)(1). When the government elects not to intervene in a relator’s action, and instead pursues a claim through an alternate remedy, courts look to determine whether there is a factual overlap between the claims pursued in the relator’s action, and the claims pursued in the government’s independent action, because “the relator has a right to recover a share of the proceeds of the alternate remedy to the same degree that he or she would have been entitled to a share of the proceeds of an FCA action.” United States ex rel. Barajas v. United States, 258 F.3d 1004, 1010 (9th Cir.2001) (internal quotation omitted). In such a case, a district court can conduct a side-by-side comparison of the claims pursued in the relator’s action, and the claims pursued by the government in an alternate proceeding, to determine whether there is a factual overlap.
Significantly, the Court does not cite any cases where a court has held a factual overlap analysis applies in an intervention case.[5] I-n fact, the Court cites just two cases when discussing the need for a factual overlap remand — Barajas and Bledsoe. Both Barajas and Bledsoe involved alternate remedy proceedings arising under § 3730(c)(5), not intervention proceedings governed by § 3730(d)(1).
In this intervention case, it is improper to address the legal question whether a factual overlap analysis applies because the government never brought a separate claim under § 3731(c). But even if the government had complied with § 3731(c)’s pleading provisions and had actually added *379 a claim to the relators’ action, such that the question framed by the Court was properly before us, the Court’s wholesale adoption of the alternate remedy factual overlap analysis would still be wrong.
As we discussed in Roberts, Congress expressly outlined the three specific situations where a relator’s recovery may be reduced in intervention eases. See Roberts, 707 F.3d at 1016. The first statutory exception for reducing a relator’s recovery in an intervention case is where the relator “planned and initiated” the FCA violation. 31 U.S.C. § 3730(d)(3). The second is where the relator “is convicted of criminal conduct arising from his or her role in the violation.” Id. The third statutory exception is a limitation of the relator’s share of the recovery to “no ... more than 10 percent of the proceeds” where the relator’s “action is one which the court finds to be based primarily on disclosures of specific information” traceable to a source other than the relator. Id. § 3730(d)(1).
Congress clearly envisioned situations where the government may add additional claims to a relator’s action under § 3731(c), and yet did not see fit to create a fourth exception allowing for a reduction of a relator’s share of the recovery in such situations. The Court’s adoption of the alternate remedy factual overlap analysis in an intervention case would create a fourth exception allowing a reduction not contemplated by Congress. Again, this approach would cross the line between interpretation and legislation.
Here, the government contends the rela-tors’ action was unrelated to what I will call the “Comstor conduct” outlined in the settlement agreement, and thus relators should not receive any portion of the settlement proceeds because the government discovered the “Comstor conduct” through the GSA audit and ensuing DOE/OIG investigation. The government further contends the entire settlement is attributable to the “Comstor conduct.”
Under the Court’s approach, on remand the district court is supposed to determine whether that different “claim” (even though the government never added such a claim to the relators’ action) overlaps factually with the relators’ claims. If there is no overlap, the relators will receive no portion of the settlement proceeds attributable to the “Comstor conduct.” And if the district court finds that the entire settlement of the relators’ action was attributable to the “Comstor conduct,” then the relators will receive no portion of the settlement proceeds whatsoever, because such a “claim” was not part of the action as originally brought by the rela-tors.
With all due respect, that is not how the FCA operates in intervention cases. In an intervention case, even if the government had asserted and was successful in showing the “Comstor conduct” was based on disclosures of information traceable to a source other than the relators, and even if the government had asserted and was successful in showing the disclosure of the “Comstor conduct” resulted in the relators’ entire action being based “primarily” on those disclosures, the relators would still be entitled to at least ten percent of the entire recovery, not just the portion of the recovery attributable to the claims as originally brought by the relators.[6] See 31 U.S.C. § 3730(d)(1) (“Where the action is one which the court finds to be based primarily on disclosures of specific information ... relating to allegations or transactions in a ... Government Accounting Office report, hearing, audit, or investiga *380 tion ... the court may award such sums as it considers appropriate, but in no case more than 10 percent of the proceeds, taking into account the significance of the information and the role of the person bringing the action in advancing the case to litigation.”)- Thus, the appropriate inquiry requires a review of the entire action to determine the primary basis of the action, and does not involve an analysis of the factual overlap of individual claims within the action.
Under the Court’s approach, if the government had actually added a claim to the relators’ action which was based upon disclosures of specific information traceable to a source other than the relators (something not done here), and that additional claim did not overlap factually with the relators’ claim, the relators would not be entitled to any portion whatsoever of the settlement proceeds arising from such a claim. This approach — essentially a fourth exception for reducing a relator’s recovery not set forth in the FCA — cannot be reconciled with the express provisions found in § 8780(d)(1).[7]
The government’s choice to intervene in this case clearly triggers specific FCA provisions that require different inquiries than those applicable to alternate remedy proceedings. An examination of this record always exposes the same fundamental flaw in the government’s position — the government never added any of its own claims in the relators’ action after intervening. The government’s failure to avail itself of the formal pleading provisions set forth in § 3731(c) is dispositive as a matter of law.
Ill
Finally, even assuming the district court was required to do some sort of factual overlap analysis under the circumstances present here, I find nothing lacking in the factual findings actually made by the district court. The district court compared the facts the government described in the settlement agreement as the “Covered Conduct” to the allegations in the relators’ complaint. The district court then concluded the relators’ claims “appear to fit” with the facts described by the government in the settlement agreement.
We can quibble about whether the district court’s use of the phrase “appear to fit” is simply a colloquial expression for “does fit” or an equivocal statement. But the fact of the matter is, the conduct described by the government in the settlement agreement does fit within the claims made by the relators in their action, and there is nothing unclear about this record that requires a remand. In the settlement agreement, the government described the particular GSA contract it contends was the source of its “different claim,” and alleges with respect to that particular contract that Cisco and Comstor:
(1) made inaccurate and/or incomplete disclosures and/or false statements, and/or presented or caused to be presented false claims to the United States; (2) failed to disclose relevant discount, rebate, true-up, benefits, credits, value- *381 added, and pricing information to the United States and, as a result, Contract pricing and orders issued pursuant to the Contract were inflated; (3) as a result of the defective disclosures of pricing information, submitted or caused to be submitted false or fraudulent claims for payment; and (4) failed to comply with price reduction obligations under the Contract and related letters of supply.
This language is indistinguishable in meaning from the claims outlined in the relators’ third amended complaint, which alleged that “Defendants failed to provide to GSA and other government agencies current, accurate and complete disclosure of their best pricing (after all discounts, rebates, and other benefits).” And why would the government ever include conduct unrelated to the relators’ action in the settlement of the relators’ action to begin with? This makes no sense.
It is clear to me the district court saw through the government’s transparent attempt to dissociate the settlement proceeds from a qui tam action comprised exclusively of relators’ claims, and appropriately awarded the relators a share of the “proceeds of the action.”
TV
In sum, the government’s position is flawed on at least three levels: (1) it depends upon a strained and incorrect reading of the phrase “proceeds of the action;” (2) it is based upon the factually incorrect premise that the government added a different claim to the relators’ action; and (3) it advocates for the wholesale adoption of a claim-by-claim factual overlap analysis applicable in § 3730(c)(5) alternate remedy proceedings that cannot be reconciled with express FCA provisions applicable in intervention cases.
The government’s position was correctly rejected in the original panel decision after exposing its first flaw, without having to address or discuss its other flaws. It should be rejected now in these en banc proceedings for the same reason.
I respectfully dissent.

. The Court’s reasoning is arguably inconsistent with other provisions in the FCA, which refer to the government settling the action, not just settling the claim. See, e.g., 31 U.S.C. § 3730(c)(2)(B) (“The government may settle the action with the defendant....” (emphasis added)).

. To the extent § 3731(c)'s use of the word "may” is permissive, it merely permits the government to choose between filing its own complaint or amending the relators' complaint. If the government elects to add a claim in one of those manners, however, the statute does not give the government a second permissive choice between adding the claim through a formal pleading, or adding the claim in some other unspecified informal manner. See 31 U.S.C. § 3731(c) (expressly referring to the “Government pleading” contemplated by Congress).

. One of the government’s arguments in Roberts could arguably be construed as a contention that a "factual overlap” analysis is required in an intervention case. See Roberts, 707 F.3d at 1017. We rejected the government’s argument on the facts, however, and thus never addressed the legal question framed by the Court in this case. See id.

. The government has never contended the relators do not qualify as original sources of dle information in their qui tarn action under § 3730(e)(4)(A).

. The government only made two arguments in the district court when challenging the relators’ right to recover a share of the settlement proceeds: (1) its “different claim” argument; and (2) a Rule 9(b) argument which it chose not to pursue in these en banc proceedings. Notably, the government has never argued the relators’ recovery should be limited to ten percent pursuant to § 3730(d)(l)'s statutory exception. The government’s ability to rely upon this statutory exception has therefore been waived, and the fifteen percent to twenty-five percent provisions of § 3730(d)(1) govern this case. See George K. Baum & Co. v. Twin City Fire Ins. Co., 760 F.3d 795, 803 (8th Cir.2014) (explaining that arguments not raised in the district court are waived, as are arguments not raised on appeal).